## CHEVER v. HORNER.

### ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 116.  Submitted December 2, 1891. — Decided December 14, 1891.

The plaintiff and the defendant in an action of ejectment in a state court in Colorado both claimed title under a valid entry of the original site of the city of Denver, made by the probate judge under the town site act of May 23, 1844, 5 Stat. 657, c. 17, as extended to Arapahoe County in Colorado by the act of May 28, 1864, 13 Stat. 94, c. 99.  The deed under which the defendant claims was executed by the probate judge and delivered several years before that executed and delivered by his successor to the plaintiff.  The elder deed was assailed as defective by reason of failure in the performance by the grantee of some of the requirements of a Territorial statute, prescribing rules for the execution of the trust arising under the act of Congress.  The Supreme Court of the State held that that deed, being regular on its face, and purporting to have been executed in pursuance of authority, was not open to attack in a collateral proceeding for defects or omissions in the initiatory proceedings.  *Held*, that this decision proceeded upon the proper construction of a Territorial law, without regard to any right, title or privilege of the plaintiff under an act of Congress, and that the writ of error must be dismissed for want of jurisdiction.

EJECTMENT.  The case is stated in the opinion of the court.

*Mr. J. Q. Charles*, for plaintiff in error, submitted on his brief.

No counsel appeared for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Charles G. Chever brought an action of ejectment against Horner and Rogers to recover the possession of lot ten, block 176, in the east division of the city of Denver, claiming ownership in fee simple.  The case is stated, in substance, by counsel for plaintiff in error thus :  The lot in dispute constituted a part of the original site of Denver, entered by James Hall, probate judge of Arapahoe County, Colorado, May 6, 1865.  This entry was made under and by virtue of an act of Congress approved May 23, 1844, entitled "An act for the relief of the citizens of towns upon the lands of the United

States, under certain circumstances;" 5 Stat. 657, c. 17, and an act approved May 28, 1864, entitled "An act for the relief of the citizens of Denver, in the Territory of Colorado." 13 Stat. 94, c. 99.

In conformity with the provisions of the first act the legislature of Colorado Territory passed an act, approved March 11, 1864, prescribing rules and regulations for the execution of the trust arising under the provisions of said acts of Congress. Sess. Laws, Colorado, 1864, 139, 149; Rev. Stats. Colorado, 1868, 619, 699. This act became applicable to the Denver town site when entered by the probate judge under and by virtue of the act of Congress of May 28, 1864.

Chever and Horner, both deraign title to the lot in dispute under the entry above mentioned, by virtue of the foregoing acts of Congress and the act of the legislature of Colorado Territory.

Upon the trial of the cause by the District Court of Arapahoe County, a jury being waived by the parties, Chever, the plaintiff, in support of his title, proved that he had filed upon the lot in question, in the office of the probate judge, on the 7th of August, 1865, in conformity with section 4 of said act of the legislature of Colorado Territory, approved March 11, 1864. And he adduced evidence tending to show his rights of possession and occupancy under the provisions of the acts of Congress above mentioned. In further support of his title, the patent from the United States to James Hall, probate judge of Arapahoe County, as trustee, was put in evidence; also deeds conveying the unexecuted portions of the trust from Hall to Kent, his successor in office; from Kent to Downing, his successor; from Downing to Clough, his successor; from Clough to Kingsley, his successor, and also a deed for the lot in question from William C. Kingsley, probate judge of Arapahoe County, Colorado, to him, dated May 7, 1875. Plaintiff also offered in evidence a book kept by probate judge Hall of the filings of claimants to the lots in the Denver town site for the purpose of showing who filed claims for said lots under section 4 of the act of the territorial legislature, and who did not, to which objection was made and sustained by the court, and plaintiff excepted.

The defendants admitted ouster and that the lot in dispute was a portion of the Denver town-site entry.

Defendant Horner, in support of his title to the lot, introduced in evidence a deed from probate judge Downing to John Hughes, dated October 24, 1867; also a deed from Hughes to himself for an undivided half of said lot, and a decree of the District Court of Arapahoe County in partition proceedings, vesting in him the other undivided half of the lot. To the introduction of this evidence plaintiff objected and reserved an exception.

In rebuttal, plaintiff offered evidence tending to show that John Hughes, to whom probate judge Downing conveyed the lot in dispute, never filed upon the same as required by section four of the territorial act of 1864; that at the time of the execution of the deed to Hughes, there were two filings upon said lot undetermined, one by plaintiff and the other by one Veasey; that Hughes was not a beneficiary under the acts of Congress creating the trust; and that he was not an occupant or entitled to the possession of said lot, and had no improvements thereon. Plaintiff also offered to prove that on or prior to May 23, 1873, he was in possession of said lot and had a fence around the same; and that on or about the 30th of May, 1873, defendant Horner broke through the fence, moved a frame house on the lot, took possession of it, and ousted plaintiff therefrom. These offers were objected to by defendants and the objections sustained, and plaintiff excepted.

The court found for the defendants. A motion for a new trial was interposed and denied, and judgment rendered on the finding. The cause was then taken to the Supreme Court of Colorado by appeal. The Supreme Court held: First, That the deed executed by probate judge Downing, as trustee, to John Hughes, dated October 24, 1867, by virtue of which the defendant Horner derived title, was analogous to the granting of a patent by the Land Department of the government; that the same presumptions in favor of the regularity of such deed existed as in the case of a patent issued by the government, and that this presumption was conclusive as between the parties to the suit, not open to attack in an action of eject-

ment, and only assailable, if at all, by direct proceedings in a court of equity. Second, That the deed executed to the plaintiff by probate judge Kingsley did not relate back to the date when the plaintiff filed his claim for said lot under section four of the act of the territorial legislature, namely, August 7, 1865. The opinion, by Beck, C. J., will be found reported in 11 Colorado, 68. The judgment of the District Court was affirmed and the cause brought here on writ of error.

It is admitted by counsel that "there is no controversy with respect to the patent issued to probate judge Hall upon the entry of the Denver town site by him. Both parties claim title under this patent, and the provisions of the acts of Congress and territorial legislature, creating the trust and regulating its execution." Counsel further states that "the question presented by the pleadings and evidence is, which one of these deeds conveys the older and superior title to the lot in dispute — the one issued by probate judge Kingsley to the plaintiff, or that of probate judge Downing to John Hughes, under which the defendant Horner claims to derive title ?"

The errors assigned in this court are: That judgment should have been given for the plaintiff and against the defendants; that the Supreme Court of Colorado erred in holding "that the deed executed by probate judge Downing to John Hughes, under and by virtue of the said act of Congress for the relief of the citizens of Denver, approved May 28, 1864, and the act of the legislature of the Territory of Colorado, prescribing rules and regulations for the execution of the trust arising under said act of Congress, could not be impeached in this action by showing that the said Hughes never became a beneficiary under the said act of Congress by filing a statement of his claim to the said lot in controversy as prescribed in section three of said act of said territorial legislature, and that said deed could not be assailed in this suit by showing such a violation of said acts of Congress and of said territorial legislature by said probate judge in the execution of said deed;" and also "in holding that the issuance of deeds by the probate judge under and by virtue of said acts of Congress and of the territorial legislature was analogous to the granting of a

patent by the Land Department of the United States government, and that in the issuance of such deeds it must be conclusively presumed that the probate judge complied with all the conditions of said acts;" and also "in holding that the said deed issued by said probate judge to said Hughes was the elder deed in point of date, and that the said deed issued to said plaintiff in error by probate judge Kingsley under and by virtue of said acts did not relate back to the date of the filing by said Chever of his statement of claim to said lots as prescribed by the rules and regulations adopted by said territorial legislature and as provided by said act of Congress."

The act of Congress of May 23, 1844, provided: "That whenever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town site, and therefore not subject to entry under the existing preëmption laws, it shall be lawful, in case such town or place shall be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judges of the county court for the county in which such town may be situated, to enter, at the proper land office, and at the minimum price, the land so settled and occupied, in trust, for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same is situated. . . . *And provided, also,* That any act of said trustees, not made in conformity to the rules and regulations herein alluded to, shall be void and of none effect. . . ." 5 Stat. 657, c. 17.

The act of May 28, 1864, extended the provisions of the former act, so as to authorize the probate judge of Arapahoe County, in the Territory of Colorado, to enter certain legal subdivisions of land mentioned, "in trust for the several use and benefit of the rightful occupants of said land and the *bona fide* owners of the improvements thereon, according to their respective interests;" and also provided "that in all respects, except as herein modified, the execution of the foregoing pro-

visions shall be controlled by the provisions of said act of twenty-third May, eighteen hundred- and forty-four, and the rules and regulations of the Commissioner of the General Land Office." 13 Stat. 94, c. 99.

The Supreme Court of Colorado said: "Under the acts of Congress above mentioned, and the provisions of the act of the territorial legislature in aid thereof, the probate judge holding the title to the town site in trust for the beneficiaries, was authorized to convey the lots and parcels of land therein to those entitled to the same. This was a general jurisdiction over the subject matter, analogous to the jurisdiction of the Land Department of the government over the issuing of patents to lands subject to entry under the land laws of the United States. Being invested with title and jurisdiction, probate judge Downing conveyed the lot in controversy to John Hughes, from whom appellee Horner deraigned title more than seven years prior to the conveyance by his successor, Judge Kingsley, to the appellant Chever. If, then, the deed from Judge Downing to Hughes is regular upon its face, and purports to have been executed in pursuance of the authority vested in the grantor, it is not open to attack in this collateral proceeding for defects or omissions in the initiatory proceedings." And it was accordingly held, as the deed was of that character, that the presumption was that the proper initiatory steps had been taken in conformity with law.

We cannot perceive that any title, right or privilege was specially set up and claimed by Chever under the acts of Congress, and that the decision of the state court was against such title, right or privilege. The decision proceeded· upon the proper construction of a territorial law prescribing rules and regulations for the execution of the trust in question, and enacted in pursuance of the acts of Congress. And the rulings in regard to the deeds issued by the probate judges were rulings not involving the denial of a title, right or privilege specially set up under the acts of Congress, by Chever as against Horner, but compliance with requirements of the territorial act. The question was whether, under the law of

Colorado, the title which had passed from the United States to the probate judge, passed from Judge Downing to Hughes or from Judge Kingsley to Chever. There was no pretence that the proceedings prescribed by the territorial act were not in due execution of the trust imposed by the town-site acts, and the conclusion reached was based purely upon the local law. Both parties admitted the title of the probate judge, and the real controversy related to the transfer of that title to one party or the other. Under these circumstances the writ of error cannot be sustained, and it must be

*Dismissed.*